**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

OZGE BOSTANCI,

                  Plaintiff,

v.                                        20-CV-00026-JLS

THE STATE UNIVERSITY OF NEW YORK,

                  Defendant.

---

# DEFENDANT'S MEMORANDUM OF LAW IN
# SUPPORT OF MOTION TO DISMISS

LETITIA JAMES
Attorney General of the
   State of New York
Attorney for Defendant
State of New York, New York

BY:    *s/ Kim S. Murphy*
          KIM S. MURPHY
          Assistant Attorney General
            of Counsel
          Main Place Tower, Suite 300A
          350 Main Street
          Buffalo, New York 14202
          (716)853-8477
          Kim.Murphy@ag.ny.gov

## Table of Contents

TABLE OF AUTHORITIES ................................................................................................. ii

Preliminary Statement ......................................................................................................... 1

Alleged Facts ....................................................................................................................... 1

Argument ............................................................................................................................. 3

LEGAL STANDARD ........................................................................................................... 3

POINT I ................................................................................................................................ 5

     TITLE VII IS INAPPLICABLE TO PLAINTIFF'S FIRST ....................................... 5

     CAUSE OF ACTION, WHICH AROSE FROM HER STATUS .......................... 5

     AS A STUDENT RATHER THAN AN EMPLOYEE. ......................................... 5

POINT II .............................................................................................................................. 7

     TO THE EXTENT THAT PLAINTIFF'S FIRST CLAIM IS GOVERNED BY ................. 7

     TITLE VII, HER ALLEGATIONS THAT PREDATE DECEMBER 10, 2018 ................... 7

     ARE TIME-BARRED. ...................................................................................... 7

POINT III ............................................................................................................................. 9

     THIS COURT LACKS JURISDICTION OVER THE HUMAN RIGHTS LAW ................. 9

     CLAIM, WHICH IS BARRED BY THE DOCTRINE OF SOVEREIGN IMMUNITY. ...... 9

Conclusion .......................................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allen v. WestPoint-Pepperell, Inc.,*
  945 F.2d 40 (2d Cir. 1991)...........................................................................................8

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)......................................................................................................4

*Barr v. Abrams,*
  810 F.2d 358 .................................................................................................................4

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2005).......................................................................................................4

*Blasio v. N.Y.S. Dep't of Correctional Services,*
  No. 04-cv-653, 2005 WL 2133601 (W.D.N.Y. August 31, 2005) ...........................10

*Brown v. N.Y. State Dep't of Corr. Servs.,*
  583 F. Supp. 2d 404 (W.D.N.Y. 2008) ......................................................................10

*Bucklen v. Rensselaer Polytechnic Inst.,*
  166 F. Supp. 2d 721 (N.D.N.Y. 2001) .........................................................................6

*Chin v. Port Auth. of N.Y. and N.J.,*
  685 F.3d 135 (2d Cir. 2012)..........................................................................................9

*Cuddeback v. Florida Bd. of Educ.,*
  381 F.3d 1230 (11th Cir. 2004) ....................................................................................7

*Deng v. New York State Office of Mental Health,*
  2015 U.S. Dist. LEXIS 4926 (S.D.N.Y. 2015) .........................................................10

*Dimps v. Taconic Corr. Facility,*
  802 Fed. Appx. 601 (2d Cir. 2020)............................................................................10

*Dube v. State Univ. of N.Y.,*
  900 F.2d 587 (2d Cir. 1990).....................................................................................9, 11

*Fonte v. Board of Managers of Cont'l Towers Condo.,*
  848 F.2d 24 (2d Cir. 1988)............................................................................................4

*Gonzalez v. N.Y. State Div. of Human Rights,*
  2011 U.S. Dist. LEXIS 114662 (S.D.N.Y. 2008) .....................................................10

*Hardaway v. Hartford Pub. Works Dep't,*
  879 F.3d 486 (2d Cir. 2018)..........................................................................................7

ii

*Hauff v. State Univ. of N.Y.,*
   425 F. Supp. 3d 116 (E.D.N.Y. 2019) .................................................................10

*Hayden v. Paterson,*
   594 F.3d 150 (2d Cir.2010)..................................................................................4

*Lachaab v. Zimpher,*
   2016 U.S. Dist. LEXIS 73103 (N.D.N.Y. June 6, 2016) ......................................5

*Lastra v. New York State,*
   2018 U.S. Dist. LEXIS 12504 (S.D.N.Y. 2018) .................................................10

*Makarova v. U.S.,*
   201F.3d110, 113 (2d Cir. 2000)........................................................................3-4

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792 (1973)..............................................................................................5

*Nat'l R.R. Passenger Corp. v. Morgan,*
   536 U.S. 101 (2002)..............................................................................................8

*Pasternak v. Baines,*
   2006 U.S. Dist. LEXIS 62898 (W.D.N.Y. 2006) ...............................................11

*Patterson v. County of Oneida,*
   375 F.3d 206 (2d Cir 2004)...................................................................................8

*Pennhurst State Sch. & Hosp. v. Halderman,*
   465 U.S. 89 (1984)...........................................................................................9, 11

*Perry v. Johnson,*
   150 Fed. Appx. 22 (2d Cir. 2005) .......................................................................10

*Rich Marine Sales, Inc v. United States,*
   384 F.Supp.3d 373 (W.D.N.Y. 2019) ...................................................................1

*Richardson v. N.Y.S. Dep't of Correctional Servs.,*
   180 F.3d 426 (2d Cir. 1999)................................................................................10

*Ruderman v. Police Dep't of N.Y.,*
   857.Supp. 326, 330 (S.D.N.Y. 1994)....................................................................4

*Stilley v. Univ. of Pittsburgh of Commw. Sys. of Higher Educ.,*
   968 F. Supp. 252 (W.D. Pa. 1996).......................................................................7

*Tadros v. Coleman,*
   717 F. Supp. 996 (S.D.N.Y. 1989), aff'd, 898 F.2d 10 (2d Cir. 1990) (per
   curiam) ..................................................................................................................5

*Vega v. Hempstead Union Free Sch. Dist.,*      iii
   801 F.3d 72 (2d Cir. 2015)...............................................................................7-8

*Weiss v. City Univ. of N.Y.*,
  2019 U.S. Dist. LEXIS 43869 (S.D.N.Y. March 18, 2019)..................................................6-7

*Yoonessi v. State Univ. of New York*,
  862 F. Supp. 1005 (W.D.N.Y. 1994) ...................................................................................11

## CONSTITUTIONS

Eleventh Amendment.................................................................................................. 1, 9-11

## FEDERAL STATUTES

42 U.S.C. ..............................................................................................................................1

42 U.S.C.
  § 2000e-2(a)(1) ...............................................................................................................5

Civil Rights Act of 1964 Title VII ................................................................................ *passim*

Human Rights Law ..................................................................................................... 1, 9-11

## STATE STATUTES

New York Executive Law
  § 296...............................................................................................................................1

## RULES

Fed.R.Civ.P. 12(b)(1)............................................................................................................1

Fed.R.Civ.P. 12(b)(1) and (6) ...............................................................................................1

## MISCELLANEOUS AUTHORITIES

Buffalo's "EDI" ....................................................................................................................3

## Preliminary Statement

Plaintiff Ozge Bostanci brings this action for alleged discrimination, harassment and retaliation purportedly based upon her sex against the State University of New York at Buffalo ("University at Buffalo") where she was a graduate student.  Complaint Dkt. 1 ¶¶ 9 - 15. Plaintiff herein seeks unspecified injunctive relief and compensatory damages, along with attorney's fees even though she is *pro se*.

The complaint purports to set forth two causes of action brought against the University at Buffalo pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and New York Executive Law § 296 ("Human Rights Law").  Dkt. 1 pp. 1-2.  This memorandum of law is submitted on behalf of the University at Buffalo in support of its motion to dismiss: (1) the Title VII cause of action pursuant Fed.R.Civ.P. 12(b)(1) and (6) as time-barred and for failure to state a cause of action and lack of subject matter jurisdiction on the grounds that Plaintiff does not meet the definition of employee under the statute; and (2) the Human Rights Law cause of action pursuant Fed.R.Civ.P. 12(b)(1) on the grounds of lack of subject matter jurisdiction as barred by the Eleventh Amendment.

## Alleged Facts

Although the University at Buffalo vehemently denies that Plaintiff was subjected to any form of discrimination, solely for the purposes of considering this motion to dismiss, the University at Buffalo acknowledges that the Court must accept as true all material factual allegations in the complaint.  *Rich Marine Sales, Inc v. United States,* 384 F.Supp.3d 373, 377 (W.D.N.Y. 2019) (citing *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir. 1998). The University at Buffalo respectfully refers the Court to Plaintiff's complaint for a complete recitation of the alleged facts.  See Dkt. 1.

Briefly summarized, Plaintiff filed a charge of Discrimination dated October 4, 2019 with the Equal Employment Opportunity Commission ("EEOC"), which she annexed to the complaint (hereinafter "EEOC charge"). Dkt. 1 pp. 7-8. Notably, because Plaintiff's form discrimination complaint is devoid of specific allegations, much of the factual allegations are gleaned from the annexed EEOC charge itself. Dkt. 1 p. 7. Beginning in August 2017, Plaintiff, a female, was an international student at the University at Buffalo in the Department of Economics PhD program ("PhD program") with a corresponding teaching assistantship ("TA"). Dkt. 1 p. 7.

According to the complaint, the first alleged discriminatory act occurred in April 2018. Dkt. 1 ¶ 5. In the summary of the facts of the case in her complaint, Plaintiff asserts in general terms only that she was sexually harassed by Dr. Peter Morgan. Dkt. 1 ¶ 19. In her EEOC charge, Plaintiff specified that she was enrolled in an economics course taught by Professor Morgan in the Spring 2018 term. Dkt. 1 p. 7. Plaintiff took offense to Professor Morgan's jokes in the classroom and more specifically about what she perceived to be invitations for a romantic relationship. Dkt. 1 p. 7. Plaintiff further alleges that Professor Morgan gave her a "C" in his course because she would not get involved in such a romantic relationship with him. Dkt. 1 p. 7.

Thereafter, Plaintiff admittedly failed the August 30, 2019 academic qualification preliminary tests for the third time. Dkt. 1¶ 19 p. 8. Dkt. 1¶ 19 & p. 8. As a result, Plaintiff was expelled from the PhD program, and her academic standing request rejected. Dkt. 1¶ 19 & p. 8.

Also, according to the complaint, the next alleged subsequent acts of discrimination were not until December 6, 2019 when Plaintiff received the Title IX investigation report prohibiting her from contact with anyone at University at Buffalo and her subsequent arrest by ICE on December 20, 2019 due to the revocation of her student status. Dkt. 1 ¶ 6. As set forth in her EEOC charge, on September 6, 2019, Plaintiff initially was prohibited from entering any University at Buffalo property or having contact with the Economics Department after failing the

necessary examinations for continued enrollment in the PhD programs; and on December 6,

2019, said determination was affirmed after her discrimination complaint to the University at

Buffalo was rejected for insufficient evidence. Dkt. 1 ¶ 19.  Plaintiff goes on to allege that she

was retaliated against after filing a complaint with the University at Buffalo's "EDI" on May 1,

2019 and thereafter filed a charge of discrimination with SUNY on October 3, 2019 that resulted

in a finding of insufficient evidence on December 6, 2019. Dkt. 1 ¶ 19.  Notably, Plaintiff's

internal discrimination charge was not filed until after she already had been expelled from the

PhD program. Dkt. 1 ¶ 19 & p. 7-8.  ¶ 19 & p. 7-8.

Plaintiff further alleges that Professor Morgan also shared responsibility for making TA

schedules with another colleague in his role as Director of Undergraduate Studies. Dkt. 1 p. 7.

Allegedly, Professor Morgan made Plaintiff work harder than anyone else in the Fall of 2018 and

demoted her to a "reader" in Spring 2019. Dkt. 1 pp. 7-8.  As a result of her academic dismissal

due to failing her preliminary tests, Plaintiff lost her TA assignment, which was dependent on her

continued enrollment in the PhD program along with high grades. Dkt. 1 p. 8.

Although Plaintiff asserts she was discriminated against beginning in April 2018, she did

not file her charge of discrimination with the EEOC until October 6, 2019. Dkt.1 ¶ 10.  The 300-

day EEOC filing deadline time bars any alleged discriminatory acts prior to December 10, 2018.

The EEOC issued a right-to-sue letter on or about October 26, 2018 after being unable to

conclude there was a violation of the statutes. Dkt. 1 ¶¶ 11-12, pp. 9, 11.

### Argument

### LEGAL STANDARD

A case is "properly dismissed for lack of subject matter jurisdiction under Fed R.Civ.P.

12(b)(l) when the district court lacks the statutory or constitutional power to adjudicate it."

*Makarova v. U.S.*, 201F.3d110, 113 (2d Cir. 2000).  "A plaintiff asserting subject matter

jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* In reviewing a motion to dismiss for lack of subject matter jurisdiction, a court may consider matters outside the pleadings. *Id.*

"To survive a motion to dismiss [for failure to state a cause of action], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2005). Under *Twombly*, courts must first disregard anything in a complaint that is merely "a legal conclusion couched as a factual allegation," and then ask whether the remaining portions of the complaint "state a claim to relief that is plausible on its face." *Id.* at 555, 570.

A claim only has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556; *Ashcroft v. Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - 'that the pleader is entitled to relief.'" *Id. See generally Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir.2010) (adopting and discussing the pleadings standard of *Twombly* and *Iqbal*).

Even prior to the Supreme Court's ruling in *Iqbal* in 2009, in the Second Circuit, "complaints relying on the civil rights statute [we]re insufficient unless they contain[ed] some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987); *Fonte v. Board of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988); *Ruderman v. Police Dep't of N.Y.*, 857.Supp. 326, 330 (S.D.N.Y. 1994). It is respectfully submitted that Plaintiff herein cannot meet the standards necessary to survive the instant motion to dismiss.

## POINT I

### TITLE VII IS INAPPLICABLE TO PLAINTIFF'S FIRST CAUSE OF ACTION, WHICH AROSE FROM HER STATUS AS A STUDENT RATHER THAN AN EMPLOYEE.

Plaintiff's first cause of action is based on Title VII. Dkt. 1 p. 7. Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). *Lachaab v. Zimpher,* 2016 U.S. Dist. LEXIS 73103 * 11 (N.D.N.Y. June 6, 2016). *See also e.g. McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801 (1973). Consequently, the existence of an employer-employee relationship is a primary element of Title VII claims. *See Tadros v. Coleman,* 717 F. Supp. 996, 1002 (S.D.N.Y. 1989), aff'd, 898 F.2d 10 (2d Cir. 1990) (*per curiam*). The facts alleged in the complaint, however, make clear that Plaintiff's complaint arises from her status as a student rather than employment as a TA, which instead is likewise dependent upon her continuation in the PhD program along with superior academic record.

In fact, Plaintiff specifically acknowledges that in order to be a TA, students are required to maintain a high GPA and pass preliminary exams. Dkt. 1 pp. 7. Clearly, even Plaintiff's allegations of discrimination in her TA workload and demotion in her TA role are dependent upon her status as a graduate student. Dkt. 1 pp. 7-8. Undisputedly, Plaintiff could not be a TA without being enrolled in the PhD program. Yet, Plaintiff's failure to pass the preliminary exam after three attempts resulted in her dismissal from the PhD program and, thus, loss of her TA position. Dkt. 1 ¶¶ 6, 19 & pp. 7-8.

Likewise, the first alleged discriminatory acts in April 2018 were the result of alleged verbal romantic advances by Dr. Morgan, Plaintiff's professor, in the academic setting. Dkt. 1 ¶

5 & p. 7. Similarly, Plaintiff's low grade of a "C" in Professor Morgan's class was alleged discrimination as a student. Dkt. 1 p. 7. Along the same lines, the subsequent acts of alleged discrimination and retaliation centered around Plaintiff's lack of required academic qualifications for the PhD program in her capacity as a student. Dkt. 1 ¶¶ 6, 19. Further, to the extent that Professor Morgan allegedly caused Plaintiff to have a disparate impact in her TA obligations, she concedes Professor Morgan did so in his role as Director of Undergraduate Students, which is an academic function as well. Dkt. 1 pp. 7-8.

Moreover, Plaintiff's dismissal from the PhD program and resulting loss of access to the campus and prohibition with contact with professors in the PhD program also arose in the academic, not employment, context. Dkt. 1 ¶¶ 6, 19 & 7-8. Plaintiff's J-1 visa revocation, that she seeks to hold the University at Buffalo responsible for, also was the result of her dismissal from the PhD program. Dkt. 7 p. 7.

Much like Plaintiff herein, the plaintiff in *Bucklen v. Rensselaer Polytechnic Inst.*, 166 F. Supp. 2d 721 (N.D.N.Y. 2001), was a doctoral student and teaching assistant who brought, *inter alia*, a Title VII discrimination claim after he failed his preliminary examination for the third time and was thus dismissed from his PhD program. The Northern District dismissed the Title VII claim reasoning that although graduate students are paid and acknowledging their unique dual role, it could not "extend the parameters of Title VII to encompass purely academic decisions, such as the testing and qualification of doctoral students, that have only a tangential effect on one's status as an employee." *Id.* at 725.

Additionally, as the Southern District recently reiterated in *Weiss v. City Univ. of N.Y.*, 2019 U.S. Dist. LEXIS 43869 *28 (S.D.N.Y. March 18, 2019), because Title VII relates to employment practices, it does not afford protection to students alleging discrimination. Consequently, the court dismissed claims under Title VII concerning a graduate student's

6

application to the university's internship program. *Id.* at *30.

Courts in other jurisdictions that have considered this issue also support the conclusion that the alleged discriminatory acts arose from Plaintiff's status as a student instead of an employee and thus are not governed by Title VII. *See Cuddeback v. Florida Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004) (noting that courts generally refuse to treat students as employees under Title VII "where their academic requirements were truly central to the relationship with the institution" (citations omitted)); *Stilley v. Univ. of Pittsburgh of Commw. Sys. of Higher Educ.*, 968 F. Supp. 252, 261 (W.D. Pa. 1996) (finding that, for purposes of Title VII, "[a]ll issues pertaining to the completion of plaintiff's dissertation relate to plaintiff's role as a student and not as an employee").

Therefore, inasmuch as Plaintiff's claims, including those with respect to her TA position that are dependent upon her student status, arise out of her student status and thus do not meet the requirements of Title VII protection as they involve academic qualifications. Accordingly, Title VII claim should be dismissed because the claims arise out of Plaintiff's role as a student rather than employee.

## POINT II

### TO THE EXTENT THAT PLAINTIFF'S FIRST CLAIM IS GOVERNED BY TITLE VII, HER ALLEGATIONS THAT PREDATE DECEMBER 10, 2018 ARE TIME-BARRED.

A plaintiff must pursue available administrative remedies "[a]s a precondition to filing a Title VII claim in federal court." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018). "Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within 180 or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days 'after the alleged unlawful employment practice occurred.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78-79 (2d Cir. 2015)

(quoting 42 U.S.C. § 2000e-5(e)(1)).

The failure of Plaintiff herein to file a timely EEOC charge appears on the face of her

complaint. Plaintiff alleges that she filed a charge of discrimination with the EEOC on October 6,

2019, which she attached to her complaint. Dkt.1 ¶ 10 & pp. 7-8. *See Allen v. WestPoint-*

*Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) ("documents appended to the complaint" may be

considered in assessing motion to dismiss). Thus, any allegations of discrimination, retaliation

and workplace harassment involving conduct that occurred more than 300 days before that

date—on or before December 10, 2018—are untimely.

In short, Plaintiff alleges she was discriminated against in April 2018 but acknowledges

waiting until October 6, 2019 in which to file an EEOC charge. Dkt. 1 ¶¶ 5, 10. The time-barred

conduct thus includes plaintiff's first claim of discrimination by allegedly Professor Morgan

including his purported sexual comments, advances and her grade of a C (that would not meet

the high GPA requirement to be a TA). Dkt. 1 ¶

The complaint does not allege any action taken by the University at Buffalo after

December 10, 2018 that might justify applying the continuing violation doctrine, which provides

that a claim alleging a pattern of ongoing discrimination "is timely so long as one act

contributing to the claim occurred within the statutory period." *Patterson v. County of Oneida*,

375 F.3d 206, 220 (2d Cir 2004).   As the Supreme Court and Second Circuit have confirmed,

however, a "practice," as discussed in Title VII, refers to "'a discrete act or single occurrence,'"

meaning that "'a discrete retaliatory or discriminatory act occurred on the day that it happened.'"

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78-79 (2d Cir. 2015) (quoting 42 U.S.C.

§ 2000e-5(e)(1)) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-11 (2002))

(additional internal quotation marks omitted).  Under this rubric, every "discrete discriminatory

act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*,

8

536 U.S. at 113.

Likewise, the Second Circuit has held that "every failure to promote is a discrete act that potentially gives rise to a freestanding Title VII claim with its own filing deadline," even if such decisions are allegedly "undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Chin v. Port Auth. of N.Y. and N.J.*, 685 F.3d 135, 157 (2d Cir. 2012). Moreover, to the extent Plaintiff is pursuing a disparate treatment or disparate impact theory of discrimination, the continuing violation doctrine apply with equal measure. *See Id.* at 158. Accordingly, this court should disregard as time-barred plaintiff's allegations of discrimination and retaliation that predate December 10, 2018.

<h2 style="text-align:center">POINT III</h2>

<h3 style="text-align:center">THIS COURT LACKS JURISDICTION OVER THE HUMAN RIGHTS LAW<br/>CLAIM, WHICH IS BARRED BY THE DOCTRINE OF SOVEREIGN IMMUNITY.</h3>

Plaintiff's second cause of action is based on the Human Rights Law. Complaint Dkt. 1 p. 2. Yet, the Human Rights Laws claim against State agencies is barred the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). The Supreme Court's opinion in *Pennhurst* plainly states that sovereign immunity bars a federal court from reviewing any state law claim against state agencies (and officials), including Plaintiff's claims under the Human Rights Law. *Id.* at 106 and 112 ("it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law"). The State University of New York and its campuses clearly are state agencies entitled to Eleventh Amendment immunity. *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594-95 (2d Cir. 1990) ("For Eleventh Amendment purposes, "SUNY is an integral part of the government of the State [of New York] and when it is sued the State is the real party.'") (citation omitted).

Second Circuit case law holds that the Human Rights Law is not a waiver of the State's sovereign immunity from suit in federal court. *Richardson v. N.Y.S. Dep't of Correctional Servs.*, 180 F.3d 426, 447-49 (2d Cir. 1999) (affirming summary judgment dismissal of Human Rights Law claim), abrogated on other grounds by *Burlington Northern & Santa Fe Railway Co.*, 548 U.S. 53 (2006). Relying upon its decision in *Richardson v. N.Y.S. Dep't of Correctional Servs.*, 180 F.3d 426, 447, the Second Circuit recently affirmed the dismissal of a Human Rights Law claim as barred by the Eleventh Amendment in *Dimps v. Taconic Corr. Facility*, 802 Fed. Appx. 601, 603 (2d Cir. 2020) (summary order). *See also Perry v. Johnson*, 150 Fed. Appx. 22, 23 (2d Cir. 2005) (summary order) (affirming dismissal of Human Rights Law claim on the grounds of Eleventh Amendment immunity when not raised by plaintiff on appeal).

Additionally, in reliance upon this authority, the district courts in this Circuit have uniformly held that the Eleventh Amendment bars state Human Rights Law claims as is there no exception to or waiver of the State's sovereign immunity for. For instance, in *Hauff v. State Univ. of N.Y.*, 425 F. Supp. 3d 116, 128 (E.D.N.Y. 2019), the Eastern District recently barred the Human Rights Law claim of a SUNY employee pursuant to the Eleventh Amendment. *See also Lastra v. New York State*, 2018 U.S. Dist. LEXIS 12504 *6 (S.D.N.Y. 2018); *Deng v. New York State Office of Mental Health*, 2015 U.S. Dist. LEXIS 4926 *13 (S.D.N.Y. 2015); *Brown v. N.Y. State Dep't of Corr. Servs.*, 583 F. Supp. 2d 404, 415 (W.D.N.Y. 2008); *Gonzalez v. N.Y. State Div. of Human Rights*, 2011 U.S. Dist. LEXIS 114662 *8 (S.D.N.Y. 2008).; *Blasio v. N.Y.S. Dep't of Correctional Services*, No. 04-cv-653, 2005 WL 2133601 at *3 (W.D.N.Y. August 31, 2005).

Nor can plaintiff herein escape this holding by citing the supplemental jurisdiction of this Court. The Court in *Pennhurst* specifically considered this argument and rejected it:

"[N]either pendent jurisdiction nor any other basis of jurisdiction may

override the Eleventh Amendment. A federal court must examine each
claim in a case to see if the court's jurisdiction over that claim is barred by
the Eleventh Amendment. We concluded above that a claim that state
officials violated state law in carrying out their official responsibilities is a
claim against the State that is protected by the Eleventh Amendment. We
now hold that this principle applies as well to state law claims brought into
federal court under pendent jurisdiction."

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. at 121 (footnote and citation omitted).

It is further settled that a court's granting of injunctive relief against a State official may

not be based on violations of State law, including the Human Rights Law. *Id.* at 106; *Pasternak*

*v. Baines,* 2006 U.S. Dist. LEXIS 62898 * 28 (W.D.N.Y. 2006) (court cannot enjoin acts

violating the Human Rights Law). *See also Dube v. State Univ. of New York,* 900 F.2d 587, 595

(2d Cir. 1990), *cert. den. sub nom., Wharton v. Dube,* 501 U.S. 1211 (1991); *Yoonessi v. State*

*Univ. of New York*, 862 F. Supp. 1005, 1012 (W.D.N.Y. 1994). Accordingly, the second cause of

action against under the Human Rights Law should be dismissed pursuant to the Eleventh

Amendment and doctrine of sovereign immunity.

## Conclusion

For all the reasons stated herein, Defendant University at Buffalo respectfully requests

that the Court grants its motion and dismisses the complaint.

DATED:     Buffalo, New York
           September 17, 2020

                              LETITIA JAMES
                              Attorney General of the State of New York
                              Attorney for Defendant

                   BY:     *s/ Kim S. Murphy*
                           KIM S. MURPHY
                           Assistant Attorney General, of Counsel
                           Main Place Tower, Suite 300A
                           350 Main Street
                           Buffalo, New York 14202
                           (716) 853-8477

Kim.Murphy@ag.ny.gov

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**OZGE BOSTANCI**
                          **Plaintiff,**

    **v.**

**THE STATE UNIVERSITY OF NEW YORK**

        **Defendant.**

_____

**20-CV-00026-JLS**

### CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2020, I electronically filed the foregoing with the Clerk of the District Court using its CM/ECF system.

And, I hereby certify that on September 17, 2020, I have mailed the foregoing, by the United States Postal Service, to the following Plaintiff:

> Ozge Bostanci
> 53 American Campus Drive
> Apt. 1401
> Buffalo, New York 14228

DATED:      September 17, 2020
                  Buffalo, New York

> LETITIA JAMES
> Attorney General of the State of New York
> Attorney for Defendant
>
> BY: *s/ Kim S. Murphy*
> KIM S. MURPHY
> Assistant Attorney General, of Counsel
> Main Place Tower
> 350 Main Street, Suite 300A
> Buffalo, NY 14202
> Telephone: (716) 853-8477
> Kim.Murphy@ag.ny.gov

12